Our fourth case this morning is Nyandwi v. Garland. All right, I see both counsel. Can you both hear me? We can, Your Honor. All right, is it Tarasen? Tarasen. Tarasen, you may proceed. Thank you, Your Honor. Good morning, Your Honors, and may it please the Court. The immigration judge's decision denying Mr. Nyandwi's claim under the Convention Against Torture reflects three legal errors any one of which is sufficient to merit granting his petition for review and remanding for further reconsideration in this case. I'd like to begin with the aggregate risk rule and the immigration judge's failure to meet his obligation under that rule. Mr. Tarasen, with respect to that rule, even if the immigration judge didn't meet it, didn't the Board of Immigration Appeals fix it? Isn't that easy to deal with? It would be, Your Honor, if the Board of Immigration Appeals had done a few things, none of which they did in this case, and there's a few reasons why the Board's decision in this case isn't sufficient to cure the error from the immigration judge. First of all, there's no evidence from the BIA's opinion that it actually understood the error that was being asserted. If you look at the legal standards that it sets, it's not clear whether it actually understands the aggregate risk rule to mean what the BIA itself articulated in JRGP, i.e., a failure to cumulatively consider all of the evidence under the proper legal standard, i.e., a non-citizen is saying, I have a claim on basis A, B, and C, and you've got to sort of consider those in unison. Well, here's what they say. The respondent argues that the immigration judge erred in failing to consider the, quote, cumulative effects, quotes, of the evidence. It strikes me as them articulating that they understand the test that you just stated. Well, what they go on to say is that, what they go on to say is that the record reflects that in evaluating the respondent's claim, the immigration judge considered the relevant factors such as, and so there's no indication there that they actually understand the error or what it means to consider the cumulative effect of the claim. And in particular, if you go to the next sentence. Because I'm going to let you move on with your argument, but let me just ask you, you do agree that the Board of Immigration Appeals, if the immigration judge did, in fact, make an error with respect to aggregate risk, the Board of Immigration Appeals can fix it, but you just don't, your position is that they didn't, in fact, fix it, right? Yes, and I'll go on because I think it's not just that we don't believe that they actually understood the error. I think the next sentence is really pivotal. What they say is that the immigration judge's detailed consideration of various risk factors reflects a careful analysis of the component parts. And so what they're basically saying is that you can, they're basically recommitting the same error that the immigration judge does, and they're not meeting the standard that the BIA itself has set. The aggregate risk rule says, hey, immigration judges, if you want to take your discussion of a CAT claim and you want to divide it into three component parts, that's perfectly fine, but you have to remember at the end of the day that there's only one claim in front of you. That's precisely what this court in Chen, for example, said in the asylum precedent, and what other courts have recognized is that an immigration judge or the BIA fails to properly consider a CAT claim when it divides it into three component parts, and it doesn't at the end say, hey, wait a minute, we're still only adjudicating one claim, and so we've got to look at this in total, right? We've got, and so for the BIA to say it's sufficient to solely consider the component parts of the claim is logically inconsistent with its own rule saying, actually, you've got to add them up. You've got to look at them all at once and remember that this is not three separate divisible claims, that this is one claim. I think the other reason that it's not really clear that the board really understands what's going on here is because how fundamentally the immigration judge's failure to respect the aggregate risk rule impacts its decision in this case, and I think that's particularly clear if you look at the argument that Mr. Nyanwe raised before the immigration judge relating to his ethnicity and the way that it impacted the likelihood that he would be viewed on account of his political opinion. Mr. Nyanwe explicitly argued to the immigration judge that his ethnicity was not just relevant in and of itself, but that it was relevant because he would be viewed by the ruling regime in a country with decades of ethnic conflict as he would automatically be viewed on account of his ethnicity as a political opponent, and what the immigration judge does is in dividing his claim into three, he actually never addresses that argument and the BIA never addresses that argument, and so these two lines that the BIA puts don't actually cure the defect because there's no indication that the BIA gives that they actually understood that the argument that Mr. Nyanwe has raised. If you look at the way that the immigration judge treats that discussion, what he does is when he discusses political opinion, he really only focuses on the possibility of Mr. Nyanwe being viewed as a political opponent because he failed to make election payments. There's no discussion of his ethnicity, and then later when he discusses Mr. Nyanwe's ethnicity, he says, well, there's really nothing there because the primary way that people are persecuted or tortured in Burundi is on account of their political opinion, and so in dividing Mr. Nyanwe's claim into three, he's left an argument on the floor. There's an argument that he doesn't actually get to that was explicitly raised below, and the BIA's one-sentence opinion that it says, hey, we promise we looked at it isn't enough, and in particular, this court has been very clear that the board and the immigration judges must leave a record for this court to review, that it's not simply enough for them to just say they did what they're supposed to do, although, again, we don't concede that they actually understood what was going on here, but they've got to convince this court that they actually understood the error and that they understood it sufficiently and leave a meaningful and reviewable record for this court to review to make sure that it understood that error. I'd like to turn, if I could, to the second point we raised, which is the immigration judge's failure to consider certain evidence. The immigration judge in this case effectively concedes that if the removal order is allowed to go into effect, Mr. Nyanwee will likely encounter government officials upon his arrival in Burundi, he will be detained in government custody, and he will be interrogated. The immigration judge's opinion then goes on to basically discuss the likelihood that he will be tortured and basically gambles that he will be executed. He will escape from government custody and that he will not, for example, at that moment that he's detained and in government custody, be viewed as a political opponent. His discussion on that point focuses almost entirely on his ability to make election contributions as the way that the government will view him as a political opponent. And what that ignores is a substantial amount of country-conditioned evidence in the record that suggests that there are other characteristics that Mr. Nyanwee has that will speak for him. In other words, the immigration seems to think that Mr. Nyanwee will be a convincing person and will be able to sort of convince the government that he's not really an opponent. But I think what the record shows is that this is a government that makes those assumptions for people. This is a government that has taken power after decades of ethnic conflict that is violating contrary to the rule of law. And Mr. Nyanwee will be entering that context. This is a country where the West is vilified because the West has sanctioned the country for human rights violations. So Mr. Nyanwee will be entering the country with no passport, having never set foot in the country. He will not look like someone who resembles a Burundian. He does not dress like a local. He does not wear his hair like a local. He does not speak the local language. He does not know how to greet people with respect in the way that is expected in Burundi. And the immigration judge never considers any of those facts. He also, again, as we mentioned, never considers Mr. Nyanwee's ethnicity as being relevant to whether or not he will be viewed as a political opponent. He considers ethnicity sort of standing on its own, but he never considers the argument that Mr. Nyanwee explicitly raised below that his ethnicity will, in effect, speak for him and that he will not get a chance in this country riven by ethnic conflict to demonstrate that he's a political opponent. Now, to the extent this court credits the immigration judge's thinking around election payments as being relevant, I think it's also important to remember that the immigration judge effectively picks one statement out of the record as to the amount of those payments and completely ignores, just completely does not even discuss ample evidence in the record that the payments are orders of magnitude higher than what the immigration judge says, that individuals are, that these payments create an opportunity for extortion, that the payments are demanded multiple times from individuals. And what the immigration judge says is, you know, it's just a dollar based on one statement in the record that that's the official amount of those payments and doesn't give any consideration to any of the other evidence. And so because of that, the immigration judge simply didn't consider the remainder of the evidence relating to the amount of the payments. He simply doesn't grapple with that evidence. Finally, I'd like to turn to a moment to the evidence that the immigration judge improperly demanded from Mr. Nyanwe in corroboration of his claims. This court and the immigration regulations are quite clear that a non-citizen's testimony in and of itself may be sufficient to establish a claim and that country conditions materials may also be sufficient to establish a claim. And what the immigration judge does here is he does something very curious. He says, I acknowledge that there might be some evidence of a general pattern of torture in Burundi, but I'm not going to credit that evidence because it doesn't name specific names of individuals who were tortured. And the question the immigrate, and that's frankly erroneous for two reasons that are clearly established in this court's precedent. Number one, it's not appropriate for an immigration judge to imagine evidence and assume that it will be available to a non-citizen. What the evidence reveals in this case is that the United Nations has a five-member team that has spent years trying to get evidence about human rights violations in Burundi, which it knows are happening and struggles to do so, that the government operates secret prisons and that people in Burundi, that their climate of fear in Burundi is such that people are afraid to even ask questions about the murders that are happening, that bodies are dumped in the street and folks are afraid to ask questions. And so it's unreasonable for the immigration judge to ask Mr. Nyanwe to come forth with specific names. And further, this court has held in cases like Velazquez-Benegas that such general evidence is in fact specific to the non-citizen if the non-citizen fits within the class of individuals that are described in the evidence. Mr. Nyanwe does here and it was therefore inappropriate for the immigration judge to demand this additional evidence. Thank you. Thank you. Ms. Bowen. Yes, may it please the court, Jennifer Bowen, on behalf of the respondent, the United States Attorney General. The record here does not compel the conclusion that petitioner met his burden to show a substantial risk of torture. The board addressed all of the arguments that were raised on appeal, which included that the immigration judge erred in failing to consider the aggregate risk of harm, but found that the immigration judge consideration of the totality of the record amounted to a consideration of the component parts of a holistic claim, as reflected at the administrative record at pages 49 through 51 of the immigration judge, which is the immigration judge's decision in consideration of the claims. The board also found that the record would not support an argument that the immigration judge ignored or dismissed any relevant evidence. And finally, the petitioner did not exhaust before the board an argument that the immigration judge required unreasonable corroborating evidence. And furthermore, even if this court were to find that that argument was exhausted, then the record would not support that argument where the immigration judge relied on the petitioner's own testimony and the brother's testimony. If the court does not have any questions, respondent can rest on his brief or I can continue. I'm not sure what would be the most efficient use of the court's time. I have no questions. All right. Apparently there are no questions. Ms. Bowen, if that concludes your argument, that's fine. All right. Thank you very much. Mr. Terrison. Thank you, Your Honor. I'd like to just return really briefly to the point we started with, which is the point about cumulative evidence. I think it's important to understand the aggregate risk rule as other circuits have defined it. I understand. I think the way of understanding the aggregate risk rule is as basically saying, immigration judges, it's perfectly fine if you want to divide a case into three different parts. But at the end, you've got to consider those parts in unison. And it prejudices a non-citizen if you separately consider the likelihood of torture based on, for example, political opinion, and separately consider the likelihood of torture based on ethnicity. And you don't, at the end, consider those in cumulative because you've effectively changed the goalposts. You've prejudiced the non-citizen's claim. That's what the Fourth Circuit said in Rodriguez-Arias. And that's what the immigration judge did here. Mr. Terrison? He improperly required— Mr. Terrison? Are you looking for some conclusory paragraph in an immigration judge's opinion that combines the three elements so that you're satisfied that he has merged the argument into a single aggregate? Well, that might be evidentiary support that what we're looking for is for the immigration judge to properly consider the claim as one standard. And so such a paragraph might be evidence of that the immigration judge— How do we know that he has not considered all of them if he addresses each one individually? Well, here, I think there's evidence that there are— again, there are arguments left on the floor. Mr. Yan, we explicitly raised below that his ethnicity was relevant to political opinion. And in the political opinion section, the immigration judge doesn't discuss his ethnicity. And in the discussion of ethnicity, he says, no, no, ethnicity actually isn't particularly relevant in Burundi. People aren't tortured in Burundi because of their ethnicity. They're tortured because of their political opinion. So there's no likelihood of torture based on ethnicity. And that misses the point, because the point is, is that in Burundi, ethnicity speaks to political opinion. I think a good example would be in Afghanistan, if you're a woman who attends university, regardless of whether or not you actually have a political opinion, you're deemed to have a political opinion. And that's the problem here, is that the immigration judge and neither the immigration judge nor the BIA considers the fact that these traits might be linked. And so it's perfectly fine for an immigration judge to consider the elements separately, but he's got to leave room for the fact that in the political reality of a country, they may not be separate. Thank you, Your Honor. Thank you. Thank you very much. Thanks to both counsel. The case is taken under.